ing that there were landowners affected by the improvement other than those named in the petition.

In our judgment, the failure to give notice to plaintiff of the filing of the petition and the date of the first hearing on the proposed ditch improvement in no wise affected the jurisdiction of the board of county commissioners over his lands in said proceedings. The jurisdiction to act was vested in the board of county commissioners by reason of the notice served upon plaintiff as provided by Section 6456, General Code.

Plaintiff's relief, if any is required, is by an appeal (Section 6467 *et seq.*, General Code), and not by a separate suit for injunctive relief.

No error assigned is well made.

The judgment will be affirmed.

*Judgment affirmed.*

WISEMAN and MILLER, JJ., concur.

THE G. ANDREWS ESPY REALTY CO., APPELLEE, *v.* BURTON-RODGERS, INC., APPELLANT.

(No. 7640—Decided November 17, 1952.)

*Messrs. Graydon, Head & Ritchey,* for appellee.
*Messrs. Gorman, Silversteen & Davis,* for appellant.

MATTHEWS, J. This is an action to recover the amount paid by the plaintiff to the city of Cincinnati as a condition to the issuance of a permit to tap into and use a sewer in connection with its real estate on Reading road, conveyed to the plaintiff by the defendant by a deed containing the usual covenants of general warranty. The basis of the claimed right of recovery is that the warranty against encumbrance was violated by the existence of a lien to pay a portion of the cost of a sewer assessment at the time of the purchase, and that the money was paid to remove the lien, the existence of which constituted the violation of the covenant against encumbrances.

The trial court found that the warranty had been violated and entered judgment for plaintiff for the amount paid to discharge the lien together with interest. This appeal is from that judgment.

It is admitted that the proceedings taken by the council of the city of Cincinnati in providing for the construction of this sewer and the levying of the assessment to pay for its cost according to benefits were regular in every respect and in compliance with the law. The dispute relates to the power of council to incorporate into the assessing ordinance a provision that the assessment should be due upon the issuance of a permit to tap the sewer, and that the lien should attach from the date of the levy.

It appears that in 1931, as one improvement, the city of Cincinnati constructed a sewer in a section of Reading road and a sewer at right angles thereto through the premises against which the assessment was levied and the lien imposed. The assessing ordinance opened with a recital of the proceedings theretofore taken, stated that the notices required by law

were given, that no objection had been filed to the report of the estimating board, and then proceeded: "That there be and hereby is levied and assessed on the lots and lands described in said report and in this ordinance the amounts as set forth, to wit: Provided, nevertheless, that said assessment is to be paid only at such time as application shall be made in the future for permission to tap into said sewer for which assessments are levied by this ordinance."

In 1938, a predecessor in title of the plaintiff constructed a building with water closets and lavatories on the premises against which the levy was made and connected these toilet facilities with that portion of the sewer which ran at right angles to Reading road. No permit to make this tap was issued by the city of Cincinnati, and apparently it knew nothing about it then or thereafter until 1949 when the plaintiff, who had acquired title in the meantime, applied to the city of Cincinnati for a permit to connect to the sewer a building which it had erected. The plaintiff was then told that there was an unpaid sewer assessment of $746 against the property which must be paid before a permit would be issued. Because of this refusal and in order to obtain the permit, the plaintiff paid the amount of the assessment to the city of Cincinnati and brought this action to recover that amount from its immediate predecessor in title upon the warranty against encumbrances.

There is evidence that at the time this sewer was constructed there already existed a sewer across the rear of these premises, parallel to Reading road, and also a sewer at right angle to Reading road, which the new cross-sewer replaced. There is no evidence of the adequacy of these sewers. There is some evidence that they were in poor condition and that the new sewer was laid at a lower level.

In view of the uncontested finding of the estimating

board and its approval by the city council and the state of the record before us, we must take as incontestable that the sewer facilities available to this property were inadequate for its needs and that it was benefited to the extent of the assessment by the construction of the new sewer.

Defendants do not dispute, as a general proposition, the power of a municipality to levy an assessment for the special benefits resulting from the construction of a sewer and to make it a charge upon the benefited real estate. Their objection is to this specific assessment on several grounds.

(1) It is urged that the provision postponing the payment of the assessment until an application to tap the sewer is made exceeded the power of the municipality.

By Section 3 of Article XVIII of the Constitution of Ohio, municipalities are authorized to exercise ''all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

This broad grant of power certainly includes the authority to do anything necessary or appropriate to carry such powers into effect, including the levy of taxes and assessments to pay the cost.

The existence of this power in a municipality is assumed in Section 6, Article XIII, whereby the General Assembly is given authority to restrict the power of municipalities to levy taxes and assessments.

We have been cited to no law placing any restriction upon the power of the municipality to fix the due date of an assessment levied by it. We know of no such law.

Indeed, by Section 3897, General Code, it is expressly provided that ''Special assessments shall be payable * * * by the time stipulated in the ordinance

* * * and shall be a lien from the date of the assessment.''

(2) Counsel urge that the device of making the payment conditioned upon application to tap the sewer was resorted to in order to avoid that provision of Section 3819, General Code, limiting assessments within a period of five years to thirty-three and one-third per cent of the actual value of the real estate and providing that an assessment for a main sewer should not exceed the cost of an ordinary street sewer of sufficient capacity to drain or sewer the lot assessed, and that where lots do not need local drainage, or are already provided therewith, no assessment shall be levied.

We find nothing in the record to make relevant any provision of this section. There is no evidence that the assessments against this property exceeded thirty-three and one-third per cent of its value. Nor is there any evidence that the assessment exceeded the cost of an ordinary street sewer adequate for the purposes of the lot or that it did not need or was adequately served with sewer facilities.

And in view of the express findings of the estimating board and the approval of its report by the city council, it must be presumed that none of these invalidating conditions existed. The burden of proving otherwise rested upon the defendant.

(3) Finally, it is urged that until the property owner applied for permission to tap this sewer, it owed nothing, and that, therefore, no lien could exist. It is suggested that it might never apply and, therefore, never become liable.

This contention ignores the fact that this sewer was tapped and was being used by the defendant at the time it conveyed to the plaintiff. It is true that it appears that no application for permission was filed or

granted, but the property owner could not take advantage of the wrongful act in so doing.

On any theory a debt arose immediately upon the tapping of the sewer. However, the existence of special benefits is not dependent upon immediate availability or actual use of the utility. In 17 American Jurisprudence, 820, Section 68, it is said: "And there may be instances when future possibilities will warrant the levying of an assessment or a tax, as, for example, in the case of property not yet provided with sewers, but in which a sewerage system may eventually be installed and connected with the trunk sewer in question."

Nor was the existence of the lien dependent upon the maturity of the assessment as a debt. By Section 3897, General Code, the lien attaches from the date of the assessment. From that date, the assessment constituted an encumbrance upon the land. It could obtain sewer service only by means of this sewer. The owner had no alternative. With the knowledge and acquiescence of the owner, it was provided for its convenience—and the price fixed. That, in our judgment, constituted a burden on its title, the existence of which was a violation of the warranty in the deed. The encumbrance could be removed only by payment of the assessment.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., concurs.